```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                 :
MIRCAL,                                                 :
                                                    :
                                            Plaintiff,       :           1:25-cv-622-GHW
                                                   :
                  -against-                        :           MEMORANDUM
                                                   :           OPINION & ORDER
MICHAEL FLACKS,                       :
                                                   :
                                         Defendant.      :
                                                   :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. BACKGROUND

On August 14, 2025, the Court issued an opinion regarding the obligations of Defendant Michael Flacks under a personal guarantee. *Mircal v. Flacks*, 2025 WL 2371109 (S.D.N.Y. 2025) (the "August Opinion").[1] The Court concluded that Mr. Flacks had violated the terms of his Guaranty. *Id.* The Guaranty contained a provision pursuant to which Mr. Flacks agreed to be responsible for any "out-of-pocket costs and expenses, including attorney costs, incurred by [Mircal] in obtaining performance of or collecting payments due" under the Guaranty:

> All out-of-pocket costs and expenses, including attorney costs, incurred by [Mircal] in obtaining performance of or collecting payments due under this Guaranty shall be deemed part of the Guaranteed Obligations guaranteed hereby. [Flacks] agrees to pay or reimburse [Mircal] for all its out-of-pocket costs and expenses incurred in collecting against [Flacks] under this Guaranty or otherwise enforcing or preserving any rights under this Guaranty and the other Transaction Documents to which the Guarantor is a party, including, without limitation, the attorney costs, to [Mircal].

Dkt. No. 20-1 (the "Guaranty") § 19.

While the parties' summary judgment briefing presented sufficient information regarding the

---

[1] Terms used without definition in this opinion have the meaning set forth in the August Opinion.

principal amount of Mr. Flacks' obligations under the Guaranty and the amount of interest owing on that amount, the parties' submissions did not address the amount of "out-of-pocket" expenses, including attorneys' fees, for which Mr. Flacks was responsible.  *Mircal*, 2025 WL 2371109, at *13.  Determination of that amount was required before the Court could enter judgment.  As a result, the Court directed the parties to "submit a joint letter to the Court . . . with their proposals regarding how the Court should determine that amount."  *Id.*  The parties proposed that the Court resolve those issues by means of "short letter-briefing."  Dkt. No. 36.  The Court adopted that proposal. Dkt. No. 37.

On September 12, 2025, Plaintiff filed a letter brief in support of its application for out-of-pocket costs and attorneys' fees.  Dkt. No. 39.  Although the Guaranty permitted Plaintiff to seek all of its attorneys' fees and out-of-pocket expenses, Plaintiff elected not to seek "significant fees and expense billed by Mircal's French counsel relating to the Guaranty's enforcement . . . ."  *Id.* at 1.  Instead, Plaintiff sought only reimbursement of the amount that it expended on the attorneys' fees and out-of-pocket expenses of Plaintiff's United States counsel, Baker & Hostetler LLP ("Baker" or the "Firm").  *Id.*

Christos G. Papapetrou, a partner at Baker, filed a declaration in support of the application. Dkt. No. 39-1 ("Papapetrou Decl.").  Mr. Papapetrou attached to his declaration copies of the invoices that the Firm had presented to Plaintiff during the course of its efforts to enforce the Guaranty.  The aggregate amount of the requested fees was $514,045.50.  *Id.* ¶ 21.  In addition, Plaintiff sought reimbursement of $1,126.40 of the Firm's out-of-pocket expenses.  Lawyers from the Firm billed their client at a discount to the Firm's standard rates.  *Id.* ¶ 8.  The Firm's invoices also reflected over $109,000 in discounts "as a courtesy to the client."  *Id.* ¶¶ 9, 12, 15, 20.  Mr. Papapetrou affirmed that Plaintiff had raised "no issues with these invoices and paid each invoice timely."  *Id.* ¶ 20.

In his declaration, Mr. Papapetrou provided an overview of the Firm and its capabilities. "Baker is one of the largest law firms in the United States with over 1,000 attorneys across 19 offices. *Id.* ¶ 3. "Baker was ranked 57th in the 2024 and 2025 *Am Law* 100 listings." *Id.* ¶ 4. Mr. Papapetrou also described the qualifications and experience of the lawyers involved in the project. *Id.* ¶¶ 5-7. The case was thinly staffed: the core team consisted of two partners, a senior associate and a paralegal.

On September 26, 2025, Defendant filed his response to Plaintiff's application for fees. Dkt. No. 40 ("Response"). In its Response, Defendant did not take issue with any of the facts presented by Plaintiff. Instead, he presented three related arguments in opposition to the fee request. First, he argued that the rates charged by Plaintiff's counsel were not reasonable. *Id.* at 2. Second, he argued that Plaintiff's team was top-heavy: "two partners billed over 280 hours of the 529.5 total hours billed on a matter involving no discovery and a single round of dispositive briefing without oral argument." *Id.* Because partners, rather than lower-billing associates, did a large percentage of the work, Defendant argued that "the manner in which Plaintiff's counsel appears to have staffed the matter turns efficiency on its head." *Id.* Third, Defendant argued that Plaintiff's hours were not reasonable because of the "lack of novelty and difficulty involved in a motion for summary judgment on a breach of guaranty claim and in the absence of any prior discovery in the action." *Id.* at 3. Defendant supported his argument with a list of what he asserted to be similar cases involving the enforcement of guarantees in which the reasonable fee was lower than Plaintiff's request. *Id.* at 4-5.[2]

---

[2] On September 12, 2025, Defendant filed a notice of appeal in this matter. Dkt. No. 38. He did so notwithstanding the fact that the Court had not entered judgment and had scheduled briefing to resolve an outstanding issue. The Court solicited the parties' views regarding whether the notice of appeal divested the Court of jurisdiction to resolve the pending motion. In an exchange of letters, the parties agreed that the Court retained authority to resolve this remaining issue. *See* Dkt. Nos. 41-44.

3

## II. LEGAL STANDARD

Because Plaintiff's entitlement to fees arises from a provision in a contract subject to New York state law, New York rules governing the determination of attorneys' fees awards apply. *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263–67 (2d Cir. 1987) (employing New York state-court rules to evaluate the reasonableness of an attorneys' fees award that arose out of a contract governed by New York law); *UMB Bank, Nat'l Assoc. v. Bluestone Coke, LLC*, No. 20-cv-2043, 2021 WL 3292519, at *5 n.4 (S.D.N.Y. Aug. 2, 2021) ("[T]he Circuit has . . . made clear that [a federal attorneys' fees] rule does not apply in diversity cases where the right to a fee turns on state statutory or common law.").

"An award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." *D&W Central Station Fire Alarm Co. v. FlatironHotel Operations, LLC*, 200 N.Y.S.3d 441, 444 (N.Y. 2d Dep't Nov. 29, 2023); *see also F.H. Krear*, 810 F.2d at 1263 (holding that to calculate the fee owed to the prevailing party based on a contractual fee-shifting provision, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."). However, under New York law, "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *F.H. Krear*, 810 F.2d at 1266. "Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement." *Id.* (quoting *Swiss Credit Bank v. Int'l Bank Ltd.*, 200 N.Y.S.2d 828, 831 (Sup. Ct. 1960)). Absent specific language "to indicate that time spent in justifying a fee application was to be included," a fee-shifting provision will not encompass a claim for fees incurred in pursuing the fee application. *Id.*

4

"The attorney [seeking fees] bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community." *Lancer Indem. Co. v. JKH Realty Grp., LLC*, 8 N.Y.S.3d 356, 357 (2d Dep't 2015). To determine the amount of fees to be awarded, "[i]n general, the court uses a 'lodestar' method, in which the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate." *F.H. Krear*, 810 F.2d at 1263. "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" *Id.*; *see also Lancer Indem. Co.*, 8 N.Y.S.3d at 357-58 ("The court should consider factors such as (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved.") (internal quotation omitted).

"Hours which reflect duplication of services, or inefficiency, or padding i.e., hours that are excessive or otherwise unnecessary, are to be disallowed." *Rehmey v. Blum*, 466 N.Y.S.2d 350, 357 (2d Dep't 1983) (internal citations omitted). Hours should also be "disallowed" if they are "inadequately documented." *Id.* at 356. "If a Judge decides to eliminate hours of service adequately documented by the attorneys, he must identify those hours and articulate his reasons for their elimination." *Id.* at 357; *see also Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (noting that the purpose of doing so is to "permit meaningful appellate review").

5

"[T]he court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *Lehman Com. Paper, Inc. v. Point Prop. Co.*, 45 N.Y.S.3d 662, 665–66 (3d Dep't 2017) (quoting *Bankers Fed. Sav. Bank v. Off W. Broadway Devs.*, 638 N.Y.S.2d 72, 74 (1st Dep't 1996)).

## III. DISCUSSION

### A. Attorneys' Fees

#### 1. Reasonable Rates

The hourly rates billed by Plaintiff's counsel were reasonable. Three Firm partners were involved in the enforcement of the Guaranty: Mr. Papapetrou, Jonathan Pressement and Maximillian S. Shifrin. Each of them billed at an hourly rate of $1,225. Papapetrou Decl. ¶ 8. These were discounted rates from their standard rates, which ranged from $1,355 to $1,545 an hour. *Id.* Each of the partners was experienced. Mr. Pressement "leads Baker's national Commercial Litigation Group." *Id.* ¶ 2. He billed a limited number of hours to the case, as a result of his knowledge regarding New York law on guarantees. *Id.* Mr. Papapetrou and Mr. Shifrin have both practiced commercial litigation for over 15 years. *Id.* ¶¶ 5-6. The team of partners involved in the matter was well experienced.

Two associates worked on the project. Jessica L. Mingrino was the principal associate. She has been practicing law at Baker since graduating from law school in 2022. *Id.* ¶ 7. When Ms. Mingrino was unavailable, Kamille Perry assisted with discrete research projects. *Id.* ¶ 2. Ms. Mingrino's time was charged at a discounted rate of $730 per hour and Ms. Perry charged at a discounted rate of $785 per hour (reductions from $945 and $1,005 respectively). *Id.* ¶ 8. Finally, a paralegal, Panteleimon Mano, billed at a discounted rate of $495 per hour. *Id.* Plaintiff provided no information regarding the background or experience of Mr. Mano.

The hourly rates billed by counsel for Plaintiff were consistent with market rates in New York for sophisticated commercial litigation practices. "Attorneys' fees must be consistent with customary fees charged for similar services by lawyers in the community with like experience and of comparable reputation." *Surveillance Technology Oversight Project v New York City Police Department*, 236 N.Y.S.3d 34, 35 (1st Dep't May 29, 2025) (cleaned up). "Experience includes not only the number of years of practice but also the nature of the practice engaged in." *Id.* (citation omitted).

Baker is a globally recognized firm. As described in the August Opinion, this litigation arose from a complex, cross-border transaction. The rates billed by these lawyers are in line with rates that have been approved in similar cases by courts in this district for lawyers at similar firms for commercial litigation matters. *See, e.g.*, *China AI Capital Ltd. v. DLA Piper LLP (US)*, No. 21-CV-10911 (VM) (VF), 2025 WL 2466633 (S.D.N.Y. May 22, 2025), *report and recommendation adopted*, No. 21 CV 10911(VM), 2025 WL 3204368 (S.D.N.Y. Nov. 17, 2025) (finding partner rate exceeding $1,400 per hour reasonable, and approving associate rates between $550-875 per hour); *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540 (JPO), 2024 WL 2093387 (S.D.N.Y. May 9, 2024), *appeal withdrawn sub nom. Tuebor REIT Sub LLC v. Paul*, No. 24-1773, 2024 WL 4482252 (2d Cir. Aug. 6, 2024) (approving partner rates of $1,535 to $1,975 per hour and associate rates of $775 to $1,265 per hour subject to a 10% discount); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, No. 15 CIV. 211 (LGS), 2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024 (finding reasonable rates ranging "from $585 for junior attorneys up to $1,765 for lead attorneys").

The fact that Plaintiff paid these rates supports a finding that they are reasonable. The touchstone inquiry is "what a reasonable, paying client would be willing to pay . . . ." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008); *see id.* at 192 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The Firm provided its client a discount to its

7

customary rates. And, at that discounted rate, the client was willing to—and did—pay. That fact weighs in favor of finding that the fees charged by Plaintiff's counsel were reasonable.

The Court does not have sufficient information to conclude that the $495 per hour rate charged by the Firm for the work of a paralegal is reasonable. "With respect to the hourly rate for paralegals in commercial litigation, courts in this District generally award between $150 to $250." *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA) (RWL), 2025 WL 1183676, at *5 (S.D.N.Y. Apr. 4, 2025), *report and recommendation adopted*, No. 22-CV-7962 (RA), 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025) (internal quotation marks and citation omitted). Plaintiff did not provide the Court information regarding the experience or expertise of the paralegal that might support a rate at the level requested. The billing records show that the work he performed was—appropriately—not very complex. In the absence of evidence of Mr. Mano's particular experience or expertise that might justify the rate charged, the Court will reduce the rate used to calculate Mr. Mano's fees to $250 per hour. This results in a reduction of the requested fee of $5,953.50.

### 2. Reasonable Number of Hours

The hours expended by counsel and the paralegal in this case were reasonable. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). The Court has reviewed each of the time entries in all of the invoices presented to the Court in support of this application. Having done so, the Court concludes that the total amount of attorney hours expended in this matter was a "reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). None of the individual time entries by any biller appears to be disproportionately large for the task, and all of the tasks for which counsel

billed were appropriate to the needs of the case. Defendant has not identified a single time entry that was inappropriate in purpose or duration.

The case was not inefficiently staffed to such a degree that a reduction in the fees is warranted. Defendant argues that the fees should be reduced because more than half of the aggregate time was billed by the two lead partners, rather than by less expensive associates. There are several reasons why this argument is not persuasive. First, a review of the individual time entries shows that each of the tasks performed by each lawyer was appropriate. Second, the billing records show that many delegable tasks were delegated to associates and a paralegal, evidencing an effort to use such resources where appropriate.

Third, and most significantly, this case is the kind of case that one could reasonably expect to be staffed heavily with senior lawyers. As described at length in the August Opinion, the Guaranty is part of a complex, cross-border transaction involving both French and Brazilian legal issues. Litigating the summary judgment motion in this case required digestion and comprehension of the nuances of the underlying transaction, and coordination with foreign counsel. These are tasks that a client can reasonably expect to entrust to senior lawyers. While Defendant argues that the lack of discovery supports a finding that the "top-heavy" nature of the billing was inappropriate, the Court draws the opposite conclusion: because the case did not involve a large volume of the kind of work that can readily be delegated to associates, the proportion of partner time is not inappropriate.

The Court will exclude from the fee award 6.1 hours of time billed by Plaintiff's counsel to litigate its entitlement to fees. The Guaranty does not evince an "unmistakably clear intent regarding the recovery of fees on fees." *Matter of Lillian G.*, 174 N.Y.S.3d 451, 455 (2d Dep't 2022). Therefore, the costs of pursuing them are not recoverable. *Id.* This decision affects 13 time entries

billed between August 18, 2025 and August 29, 2025.³ It results in a reduction in the requested fees of $7,227.50.

### 3. Other Factors Support Reasonableness of Request

The complexity of this litigation supports the reasonableness of the request. Litigating the enforceability of an absolute guarantee issued under New York law is not always complex. That is particularly true where the underlying obligation is clear. *See, e.g.*, *136 Field Point Holding Co. LLC v. Invar Intern. Holding, Inc.*, 2015 WL 1254846, at *3 (S.D.N.Y. 2015). But here, the Guaranty formed part of a complex cross-border transaction. And Defendant presented substantial arguments in opposition to Plaintiff's motion for summary judgment regarding the nature of the debt underlying the Guaranty and Plaintiff's conduct in connection with the underlying transaction. *See generally* Dkt. Nos. 22-28. The amount of fees requested here are commensurate with the complexity of the issues presented in the case and the skill required to litigate them.

The substantial amount of money at issue in this case supports the conclusion that the fees requested are reasonable. In the August Opinion, the Court concluded that Defendant owed €9,506,000, plus accrued interest. *Mircal*, 2025 WL 2371109, at *13. The amount of fees requested by Plaintiff as a result is less than 5% of that amount.

### B. Reimbursement of Expenses

The expenses that Plaintiff's counsel seeks to recover are appropriate and reasonable. Plaintiff's counsel seeks reimbursement of a total of $1,126.40 in expenses expended enforcing the Guaranty, consisting of $308.10 for legal research; $174.91 for delivery services; $314.12 in filing fees; $234.90 for transcripts; and $94.37 for overtime transportation. Defendant does not contend

---

³ The Court excluded 0.1 of the 0.6 hours billed by Mr. Papapetrou on August 27, 2025 with the following description: "[p]rovide analysis to client regarding fee application and appeal questions." Dkt. No. 39-11, at 5. The Court estimates that only a small portion of that communication would relate to the fees update, and that the bulk relates to "appeal questions."

that these modest fees are unreasonable or inappropriate. They are not. "[A]ttorney[s'] fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "As with attorneys' fees, the requesting party must substantiate the request for costs." *Guo v. Tommy's Sushi, Inc.*, No. 14 CIV. 3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016). To document costs for which reimbursement is sought, in addition to invoices and receipts, "[a] sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient." *Guo*, 2016 WL 452319, at *3. Here, Plaintiff's application for reimbursement of costs are sufficiently substantiated through both invoices and counsel's affidavit. *See generally* Papapetrou Decl. And these categories of expenses are customary. As a result, the full amount of expenses for which Plaintiff's counsel seeks reimbursement is reasonable and compensable.

## IV. CONCLUSION

The Court concludes that Plaintiff is entitled to recover $500,864.50 in attorneys' fees and $1,126.40 in expenses. In the August Opinion, the Court ordered that Plaintiff was "entitled to €5,000,000 plus interest at a rate of 10% per annum accruing from October 3, 2024; €4,506,000 plus interest at a rate of 10% per annum accruing from December 31, 2024."

As a result, the Clerk of Court is directed to enter judgment against Defendant in the amount of (1) €5,000,000 plus interest at a rate of 10% per annum accruing from October 3, 2024, (2) €4,506,000 plus interest at a rate of 10% per annum accruing from December 31, 2024, and (3) $501,990.90. Post-judgment interest on all monies due will accrue at a daily rate to be determined by the Clerk of Court until Defendant complies with the judgment, pursuant to 28 U.S.C. § 1961(a). The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: December 11, 2025
New York, New York

GREGORY H. WOODS
United States District Judge